# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

ERIN BEERY, et al.,

      Plaintiffs,

v.

QUEST DIAGNOSTICS, INC., and
AMERIPATH, INC.,

      Defendants.

Civ. No. 12-cv-00231 (KM)(MCA)

**MEMORANDUM OPINION**

This matter comes before the Court on a Motion to Compel Arbitration submitted by the Defendants, Quest Diagnostics, Inc. and AmeriPath, Inc.[1] Plaintiffs Erin Beery, Heather Traeger, and Sandy Cooper have filed an Amended Complaint which alleges that Defendants subjected female employees to a systematic pattern and practice of pay and promotion discrimination. These named Plaintiffs filed this case as a putative class action on behalf of themselves and other female sales representatives.[2] The Amended Complaint asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Equal Pay Act ("EPA"), and the New Jersey Law Against Discrimination

---

[1] In 2007, Quest Diagnostics acquired AmeriPath as a wholly-owned subsidiary. Quest has filed a separate motion to dismiss asserting that Plaintiffs, who sue as employees of AmeriPath, cannot pierce the corporate veil. (DE No. 18-1) I here refer to Quest and AmeriPath jointly as "Defendants," but in doing so I do not prejudge the corporate veil issue.

[2] The purported class comprises current and former female sales representatives who are or were employed by Defendants from February 17, 2010, through the date that a judgment is entered in this case.

("NJLAD"). Ms. Beery, Ms. Traeger, and Ms. Cooper also assert individual claims for retaliation and sexual harassment.

Defendants contend that this action must be dismissed in favor of arbitration. Each Plaintiff signed an Employment Agreement that contains an Arbitration Clause. The Arbitration Clause requires employees to arbitrate "all claims, disputes or issues" arising out of their employment with Defendants, including "all claims, disputes or issues of harassment, including sexual harassment and/or harassment based on . . . sex." Any such arbitration shall be "governed by the American Arbitration Association's National Rules for the Resolution of Employment Disputes." Thus, on its face, the Arbitration Clause would appear to require that this action be dismissed pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4.

Plaintiffs argue, however, that the Arbitration Clause is unenforceable for three reasons: 1) because its restrictive terms impair their vindication of their statutory rights under Title VII and EPA; 2) because it is procedurally and substantively unconscionable; and 3) because Defendants waived arbitration by participating in EEOC proceedings.

For the reasons set forth below, Defendants' Motion to Compel Arbitration will be granted, and the claims of Ms. Beery, Ms. Traeger, and Ms. Cooper will be dismissed in favor of arbitration. One portion of the Arbitration Clause, containing the 90-day limitations period and certain pre-claim procedures, is unenforceable because it unduly restricts Plaintiffs' vindication of their federal rights; it can, however, be severed. The signing of the

2

employment contract containing the Arbitration Clause, although perhaps marked by a disparity in bargaining power, was not procedurally unconscionable. Finally, as numerous cases have held, an employer's cooperation with or participation in EEOC proceedings does not waive a valid agreement to arbitrate.

## I. BACKGROUND

Plaintiffs' claims all arise out of their employment by AmeriPath.

Ms. Beery is an Executive Territory manager in AmeriPath's Anatomical Pathology Sales Division in Indianapolis, Indiana. She began her employment with AmeriPath in February 2004 and has consistently achieved exceptional sales results, winning multiple awards.

Ms. Traeger began her employment with AmeriPath in November 2005 as a Territory Manager of New Business Development of the Anatomical Pathology Sales Division. In June 2010, Ms. Traeger was promoted to Senior Executive Territory Manager in the Anatomical Pathology Sales Division in Bradenton, Florida. Like Ms. Beery, Ms. Traeger has achieved exceptional sales results and received numerous sales awards during her employment with AmeriPath.

Ms. Cooper was initially hired by AmeriPath on May 23, 2001, as a per diem Cytotechnologist in the Company's Youngstown, Ohio laboratory. From March 2004 through May 2005, she worked as a full-time Cytotechnologist in AmeriPath's laboratory in Cleveland, Ohio. In May 2005, Ms. Cooper was promoted to Associate Sales Representative in AmeriPath's laboratory in Youngstown. Between 2007 and 2011, Ms. Cooper was promoted four more

times; it was in March 2011 that she achieved her current position of Territory Manager of the Northern Ohio Territory. Ms. Cooper is also a consistently strong performer; her 2011 sales, for example, placed her sixth out of twenty-five territory representatives.

Within days of commencing their employment, Plaintiffs executed essentially identical Employment Agreements.[3] The Plaintiffs do not dispute that they signed the Agreement, but allege that the human resources representative forced them to sign it "in a hurry" and did not explain it to them. Paragraph 7 of the Employment Agreement, the Arbitration Clause, provides for arbitration of all disputes relating to employment:

> All claims, disputes or issues arising between Employee and the Company, its owners, directors, officers, employees, agents, successors and/or assigns . . . shall be resolved in accordance with [the arbitration clause].

Agreement at ¶ 7(a). The Arbitration Clause defines the words "Claim" or "Claims" to include:

> [A]ll claims, disputes or issues involving employment discrimination relating to Employee's . . . sex . . .; all claims disputes or issues of harassment, including sexual harassment and/or harassment based on . . . sex . . .; and any other employment related claim, dispute or issue that Employee may have under federal, state, local or common law.

*Id.* at 4-5 ¶¶ 7(a)(ii), (iii), and (v). The Arbitration Clause goes on to set forth certain pre-claim procedures. Aggrieved Employees are required first to discuss a Claim with their immediate supervisor or the Company's Senior Vice

---

[3]     Defendants submitted each plaintiff's Employment Agreements as Exhibit A to a separate certification from Richard H. Brown. The certifications and attached agreements are, for current purposes, essentially identical. For simplicity, this Memorandum Opinion refers to the Certifications collectively as the Brown Cert., and refers to the "Employment Agreement" and "Arbitration Clause" in the singular.

President of Human Resources (in person in Florida or by calling a 1-800 number). *Id.* at 5 ¶ 7(b)(i). "If the Employee is not satisfied with the [Company's] resolution of the Claim or Claims . . . the Employee shall submit the Claim or Claims . . . for final and binding mandatory arbitration." *Id.* at 5 ¶ 7(b)(ii). Any submission to arbitration – whether by the Employee or the Company – must be made within ninety (90) days after the Claim arises. *Id.* at 5 ¶ 7(b)(ii). The Arbitration Clause also contains a "loser-pays" provision: "The prevailing party in any proceeding to challenge the validity of this Paragraph 7 [*i.e.,* the Arbitration Clause] and/or any Arbitration thereunder shall be entitled to an award of attorney's fees and costs through and including any appeals." *Id.* at 5 ¶ 7(b)(iii).

The Arbitration Clause states that "[a]rbitration pursuant to this Paragraph 7 is intended to be a substitute for employment related lawsuits that Employee or the Company may consider bringing against one another as a result of the employment relationship between the Employee and the Company." *Id.* at 5 ¶ 7(c). It concludes:

> Employee and the Company have carefully read this Paragraph 7 and understand that by signing this Agreement, they are agreeing to submit the above-described Claim or Claims to arbitration in lieu of bringing a legal action. Furthermore, Employee and the Company understand that by agreeing to this Paragraph 7, they are giving up substantial legal rights, i.e., the right to sue in federal and state courts, the right to have disputes or claims heard by a jury and the right to have claims of civil rights violations considered by local, state, and/or federal investigatory agencies.

*Id.* at 6 ¶ 7(d).

A separate, "Miscellaneous" section of the Employment Agreement provides that it shall be construed under Florida law and states that any proceedings relating to the Agreement shall, to the extent permitted by law, be held in Broward County, Florida. *Id.* at p.7, ¶ 8(g).

According to the Amended Complaint, all three named Plaintiffs filed "Charges of Discrimination" with the EEOC. Ms. Beery filed her Charge on December 14, 2010, and received her Letter of Right to Sue on October 15, 2011. Ms. Traeger filed hers on January 11, 2011, and received her Letter of Right to Sue on October 17, 2011. Ms. Cooper filed hers on October 4, 2011, and received her Letter of Right to Sue on February 17, 2012.

The Complaint in this action was filed on January 12, 2012, and the Amended Complaint was filed on April 2, 2012. All three named Plaintiffs allege in this action that, despite superior performance, they have been denied promotional opportunities, have received unfair performance reviews, and have been subjected to discriminatory actions that have stalled their careers.

## II.  DISCUSSION

Federal law is decidedly pro-arbitration. The FAA's purpose is "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). Thus the statute makes agreements to arbitrate "valid, irrevocable, and enforceable," subject only to traditional contract principles. 9 U.S.C. § 2. It provides that contract provisions

manifesting the intent of the parties to settle disputes in arbitration shall be binding, allows for the stay of federal court proceedings in any matter referrable to arbitration, and permits both federal and state courts to compel arbitration if one party has failed to comply with an agreement to arbitrate. 9 U.S.C. §§ 2, 3, 4. Cumulatively, those provisions "manifest a liberal federal policy favoring arbitration agreements." *Gilmer*, 500 U.S. at 24 (quotations omitted). Thus, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

The fact remains, however, that arbitration is a creature of contract. Before referring any controversy to arbitration, the Court must determine whether the parties have indeed agreed to arbitrate it. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003). That determination has three subparts: (1) whether the parties agreed to arbitrate; (2) whether the dispute is within the scope of the agreement; and (3) whether Congress nevertheless intended the dispute to be non-arbitrable. *Sarbak v. Citigroup Global Markets, Inc.*, 354 F. Supp. 2d 531, 536-37 (D.N.J. 2004).

Plaintiffs concede that the Arbitration Clause satisfies those three criteria. They nevertheless argue that it should not be enforced because arbitration would prevent them from vindicating their statutory rights, because the Arbitration Clause is unconscionable, and because Defendants waived their

right to enforce the arbitration clause by participating in EEOC proceedings. The Court will address each of these arguments in turn.[4]

## A. Vindication of Federal Statutory Rights

A party who has agreed to arbitrate disputes may nevertheless go to court if she demonstrates that she cannot vindicate her federal statutory rights in arbitration. *See Gilmer*, 500 U.S. at 28; *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 90 (2000). Plaintiffs here assert that the Arbitration Clause should not be enforced because it impairs effective prosecution of their claims under Title VII and the EPA.

In *Gilmer*, the Court compelled arbitration of a claim for wrongful firing under the Age Discrimination in Employment Act (ADEA). 500 U.S. at 28. The Court determined that arbitration was a suitable forum for the statutory ADEA claims; ADEA would "'continue to serve both its remedial and deterrent function'" as long as litigants could "'vindicate [their] statutory cause of action in the arbitral forum.'" *Id.* (quoting *Mitsubishi Motors*, 473 U.S. at 637). The

---

[4]     After the Motion to Compel Arbitration was fully briefed, four individuals opted in as plaintiffs in the proposed Equal Pay Act collective action claim (one of eleven counts in the Amended Complaint). These opt-in plaintiffs allege that they did not sign arbitration clauses. Plaintiffs submitted supplemental briefing arguing that the presence of the opt-in plaintiffs without arbitration clauses is another reason to deny arbitration because "Plaintiffs without arbitration clauses cannot be compelled to arbitrate and their claims must be allowed to proceed in this forum." Plaintiffs argue that dividing the action into different forums would defeat the efficiency rationale of class and collective actions and risk inconsistent results. Moreover, Plaintiffs suggest that this Court should deny arbitration in the face of otherwise valid Arbitration Clauses with class members because otherwise they may not meet the numerosity requirement for a class action. The Court rejects Plaintiffs' argument that the presence of the opt-in plaintiffs changes the analysis. Supreme Court precedent has been clear for decades that the FAA requires district courts to compel arbitration of arbitrable claims even where the result would be "piecemeal" litigation in different forums. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985); *Moses H. Cone*, 460 U.S. at 20.

Court found that the New York Stock Exchange arbitral rules, which would govern the dispute, "provide[d] protections against biased [arbitral] panels," "allow[ed] for document production, information requests, depositions, and subpoenas," and "require[d] that all arbitration awards be in writing." *Id.* at 30-32. Such safeguards, the Court held, were adequate.

The Court again discussed the vindication-of rights-doctrine, and again held that the doctrine did not bar arbitration, in *Green Tree Financial Corp.- Alabama v. Randolph*, 531 U.S. 79 (2000). Larketta Randolph financed the purchase of a mobile home through Green Tree. *Id.* at 82. Her loan contained a clause that mandated arbitration but said nothing about how the proceeding was to be conducted. *Id.* at 82-83. She then filed in district court a class action against Green Tree under the Truth in Lending Act (TILA) and Equal Credit Opportunity Act (ECOA). *Id.* at 83. When Green Tree moved to compel arbitration, Randolph argued that she lacked the resources to arbitrate her claims, citing evidence that "arbitration filing fees for claims below $10,000 were generally $500 and that the average arbitrator's fee per day is $700." Brief for Respondent, *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000) (No. 99-1235), 2000 WL 1086800, at *3. The district court ordered the matter to arbitration, but the Eleventh Circuit reversed. The Eleventh Circuit was troubled by the arbitration clause's silence as to fees and costs:

> The arbitration clause in this case raises serious concerns with respect to filing fees, arbitrators' costs and other arbitration expenses that may curtail or bar a plaintiff's access to the arbitral forum . . . . This clause says nothing about the payment of filing fees or the apportionment of the costs of arbitration. It neither assigns an initial responsibility for filing

fees or arbitrators' costs, nor provides for a waiver in cases of financial hardship. It does not say whether consumers, if they prevail, will nonetheless be saddled with fees and costs in excess of any award.

*Green Tree*, 178 F.3d 1149, 1159 (11th Cir. 1999).

The Supreme Court reversed the judgment of the Court of Appeals. *Green Tree*, 531 U.S. at 91-92. The Supreme Court did not take issue with the general proposition that burdensome arbitral costs could invalidate an arbitration clause. *Id.* at 90. The Court determined, however, that Randolph's argument rested on "unfounded assumptions," *id.* at 90 n.6, and demanded a more concrete showing: "The 'risk' that Randolph will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." *Id.* at 91 (citations omitted).

At a minimum, then, *Gilmer* and *Green Tree* stand for the propositions

(a) that arbitration, even if agreed upon, can be avoided if it would frustrate the vindication of federal rights;

(b) that a party seeking to avoid arbitration on those grounds must make a concrete showing that his or her federal rights would be impaired by the arbitration process; and

(c) that familiar arbitration rules, like those of the New York Stock Exchange, will ordinarily ensure an adequate forum.[5]

---

[5]    The Arbitration Clause provides that arbitration will be ""governed by the American Arbitration Association's National Rules for the Resolution of Employment Disputes." Plaintiffs do not contend that the AAA rules, which are commonly accepted and incorporated in arbitration agreements, lack the necessary procedural safeguards.

Ms. Beery, Ms. Traeger, and Ms. Cooper ground their vindication-of-rights argument on four aspects of the Arbitration Clause. They are: (1) the "loser-pays" provision, which allegedly entitles the prevailing party to an award of attorney's fees and costs; (2) the pre-claim "discussion" procedures and 90-day time limit for commencing arbitration; (3) the prohibition on having claims of civil rights violations "considered" by investigatory agencies such as the EEOC; and (4) the Florida forum selection clause.

1. "Loser-pays" Provision

Plaintiffs maintain that the "loser-pays" provision would require the employee to pay all of the Company's fees, costs, and expenses if she were unsuccessful in the arbitration of her claims under Title VII and the EPA.[6] Plaintiffs say that they could not afford to pay Defendants' attorney's fees and expenses, which might run in the "hundreds of thousands or millions of dollars." Defendants reply that Plaintiffs are understating their financial resources. More fundamentally, Defendants say, the Plaintiffs are grossly overstating the effect of the Arbitration Clause's "loser-pays" provision. That provision does not require a losing plaintiff to pay all expenses incurred by Defendants in defending the underlying arbitration. Rather, it shifts the costs of only two narrow kinds of proceedings: (1) a proceeding to challenge to the validity of the Arbitration Clause; and (2) a proceeding to challenge the validity of the arbitration itself. According to Defendants, "given the limited nature of

---

[6]    The parties do not appear to dispute that, should Plaintiffs prevail, Title VII and the EPA's fee-shifting provisions will govern the award of fees and costs in arbitration, just as they would in court. The interpretive dispute is over the extent to which the Arbitration Clause makes Plaintiffs liable for fees and costs if they do *not* prevail.

11

the fee shifting clause, plaintiffs' claims that they might be liable for 'millions' is simply wrong." (Reply Br. at n. 2).

Plaintiffs have the burden of proof on these issues. The Third Circuit has interpreted *Green Tree* to require that the "party seeking to invalidate an arbitration agreement because arbitration would be prohibitively expensive bears the burden of showing this likelihood." *Spinetti v. Service Corp. Int'l*, 324 F.3d 212, 217 (3d Cir. 2003) (citing *Green Tree*, 531 U.S. at 92); *see Parilla v. IAP Worldwide Services, VI, Inc.*, 368 F.3d 269, 284-85 (3d Cir. 2004). Plaintiffs attempt to carry this burden by submitting declarations detailing their income and expenses. Ms. Beery, for example, declares that she "make[s] $70,700 per year in base salary," has a $300,000 mortgage on her home, spends $6,000 per year in childcare, and pays $2,300 every six weeks for MBA tuition and books. Beery Decl. at 6. Plaintiffs Traeger and Cooper have submitted similar declarations. *See* Traeger Decl. at 6; Cooper Decl. at 6.

All three Plaintiffs, however, fail to disclose commissions in amounts that are multiples of their base salaries. For example, Ms. Traeger discloses her base salary of $81,000 but fails to disclose that her total annual income, including commissions, was $354,240.40 in 2011; $262,913.14 in 2010; and $295,511.26 in 2009. *See* Certification of Doreen Arrigoni ("Arrigoni Cert.") ¶¶ 3-4. Similarly incomplete are the statements in the declarations of Beery and Cooper. *Compare* Beery Decl. at ¶ 27, *with* Arrigoni Cert. at ¶¶ 5 and 6; and *compare* Cooper Decl. at ¶ 27, *with* Arrigoni Cert. at ¶¶ 7 and 8. Consequently, even if Plaintiffs were exposed to massive fee-shifting, as they claim, I would

harbor serious doubts about whether they had carried their burden as to their inability to pay.

In any event, however, I do not believe that the Arbitration Clause does expose Plaintiffs to such massive fee-shifting. The Arbitration Clause provides:

> The prevailing party in any proceeding to challenge the validity of this Paragraph 7 [*i.e.,* the Arbitration Clause] and/or any Arbitration thereunder shall be entitled to an award of attorney's fees and costs through and including any appeals.

Agreement at p. 5 ¶ 7(b)(iii).

To be sure, there is a potential distributive ambiguity. The clause "any proceeding to challenge the validity of" might modify only the first alternative ("this Paragraph 7"), or might also modify the second ("any Arbitration").

*Plaintiff's interpretation:*

> The provision shifts costs and fees to
>
> [1] the prevailing party in "any proceeding to challenge the validity of this Paragraph 7"; and
>
> [2] the prevailing party in "any Arbitration thereunder."

*Defendant's interpretation:*

> The provision shifts costs and fees to
>
> [1] the prevailing party in "any proceeding to challenge the validity of this Paragraph 7"; and
>
> [2] the prevailing party in "any proceeding to challenge the validity of ... any Arbitration thereunder."

Under Plaintiff's interpretation, the Arbitration Clause would grant Defendants reciprocal fee-shifting privileges, the mirror image of those that

plaintiffs enjoy in Title VII or EPA litigation. I am inclined, however, to accept Defendant's interpretation, under which the Arbitration Clause does not shift the costs of the arbitration itself. Rather, it shifts the costs to the loser only in two kinds of proceedings: (1) a proceeding to challenge to the validity of the Arbitration Clause; and (2) a proceeding to challenge the validity of arbitration. In Defendants' version, these phrases plausibly share a common purpose to protect the integrity of the arbitration process. Defendants' interpretation is slightly more plausible as a matter of syntax. I also question whether such a major revision of customary fee-shifting law would be tucked in an inconspicuous clause in the manner suggested by Plaintiffs. And of course Defendants themselves disclaim any entitlement to shift the costs of arbitration should they prevail. The limited shifting of costs and fees under Defendants' interpretation would not tend to render the cost of arbitration prohibitive.[7]

A plaintiff would ordinarily be pleased to endorse Defendants' narrow interpretation, which implies that Plaintiffs are *not* at risk to pay huge defense costs. That narrow interpretation, however, works against Plaintiffs' attempt to invalidate the Arbitration Clause on grounds of excessive expense.[8]

---

[7]    Attorneys' fees aside, the fees charged by AAA are fairly modest. *See generally www.adr.org/aaa/faces/aoe/lee/employment.*

[8]    For purposes of this motion, each side embraces an interpretation of the Agreement unfavorable to itself. Defendants urge that the Agreement be interpreted narrowly, in Plaintiffs' favor, to preserve the validity of the Arbitration Clause. Plaintiffs, on the other hand, read the Agreement in the most overreaching, defendant-friendly light, in order to establish that it is too broad to be enforceable.

Perhaps both parties are being somewhat opportunistic. The least charitable interpretation of Defendants' position would be that they have drafted invalid but intimidating contractual provisions, only to claim, when challenged, that they meant nothing of the sort. The least charitable interpretation of Plaintiffs' position would be that they are exaggerating any flaws in the contract in order to draw a favorable ruling

As I say, I am inclined to accept Defendants' interpretation of the fee-shifting provision, but the provision is, at worst, ambiguous. And even an ambiguous provision would not help Plaintiffs avoid arbitration. In *Quilloin v. Tenet Health System Philadelphia, Inc.*, 673 F.3d 221 (3d Cir. 2012), the parties disputed whether an arbitration agreement allowed the prevailing party to recover attorney's fees. 673 F.3d at 231. The district court found the agreement to be ambiguous on that point, and ruled that it could not compel arbitration until it resolved the attorney's fees issue. The Third Circuit reversed, holding that "[w]e agree with the District Court that the arbitration agreement is ambiguous regarding the award of attorneys' fees, but find that the District Court erred in determining that it could not compel arbitration before resolving the issue." *Id.*

What the district court missed, said the *Quilloin* panel, is that "[t]he Supreme Court has clearly established that ambiguities in arbitration agreements must be interpreted by the arbitrator." *Id.* (citing *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 406–07 (2003)). And indeed the Supreme Court has held that the courts "should not, on the basis of mere speculation that an arbitrator might interpret . . . ambiguous agreements in a manner that casts their enforceability into doubt, take upon ourselves the authority to decide the antecedent question of how the ambiguity is to be resolved." *PacifiCare*, 538 U.S. at 406–07 (citation and internal quotation marks omitted).

---

from the Court. *Cf.* http://en.wikipedia.org/wiki/Flop_(basketball). I adopt neither the "passive-aggressive" nor the "flop" interpretation. I do point out that the parties' short-run positions here may have long-run estoppel consequences.

The *Quilloin* district court thus erred when it reached out to decide an issue that might or might not arise, depending on the arbitrator's interpretation of the agreement (or the identity of the prevailing party).

Under *PacifiCare* and *Quilloin*, then, even an ambiguous loser-pays provision would not stave off arbitration; it would pose an issue to be resolved by the arbitrator. This, too, persuades me that I cannot say that the fee-shifting provision of the Arbitration Clause prevents Plaintiffs from vindicating their statutory rights. I will not invalidate the Arbitration Clause on such a basis.

### 2. Pre-Claim Procedures and 90-day Limitations Period

The Arbitration Clause provides that any arbitration claim "shall be made within ninety (90) days after the Claim or Claims in question arises." But before pursuing a claim in arbitration, an employee must discuss the matter with her immediate supervisor or the Company's Senior Vice President of Human Resources (in person in Florida or by calling a 1-800 number). Agreement at p. 5, ¶ 7(b)(i). Only then, "[i]f the Employee is not satisfied with the [Company's] resolution of the Claim or Claims . . . the Employee shall submit the Claim or Claims . . . for final and binding mandatory arbitration." *Id.* at p. 5, ¶ 7(b)(ii). The implication is that the required pre-claim discussion, as well as the filing of a claim in arbitration, must be completed within the 90-day limitations period. Plaintiffs contend that this schedule is simply too tight; these provisions unduly burden their vindication of their statutory rights.

A provision limiting the time to bring a claim is not necessarily unfair or unenforceable, but the time period must be reasonable. *Alexander v. Anthony*

*Int'l, L.P.*, 341 F.3d 256, 266 (3d Cir. 2003). In *Alexander*, the Third Circuit declared an Arbitration Clause unconscionable, substantially because an absolute 30-day statute of limitations on all employee claims "inappropriately assist[ed the defendant] by making it unnecessarily burdensome for an employee to seek relief." *Id.* Importantly, the provision in *Alexander* imposed an absolute bar on all claims filed more than 30 days after "the event which forms the basis of the claim." Such a rigid claim bar precludes employees from taking advantage of the "continuing violation" doctrine and the "discovery rule," tolling doctrines that ameliorate the harshness of a short limitations period. *Id.* at 266-67.[9] *See also Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1175 (9th Cir. 2003) (limitations provision contained in an arbitration clause was unconscionable because it foreclosed "the possibility of relief under the continuing violations doctrine"); *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 894 (9th Cir. 2002), *cert. denied*, 535 U.S. 1112 (2002).

Here, Plaintiffs allege that the 90-day deadline is a rigid time bar that precludes them from invoking the continuing violation doctrine and the accrual rule embodied in the Lilly Ledbetter Fair Pay Act of 2009.[10] It is not at all apparent, however, that the Arbitration Clause actually deprives Plaintiffs of

---

[9]     The continuing violation doctrine provides that the statute of limitations does not begin to run until a continuing course of tortious conduct ceases. *Pearson v. Ford Motor Co.*, 694 So.2d 61, 68 (Fla. Dist. Ct. App.1997) (Florida law); *Roa v. Roa*, 200 N.J. 555, 985 A.2d 1225, 1231 (2010) (NJ law). The discovery rule, as the name implies, may delay the running of a statute of limitations until the plaintiff knows or should know of her cause of action. *See Larson & Larson, P.A. v. TSE Indus., Inc.*, 22 So. 3d 36, 51 (Fla. 2009) (Florida law); *Martinez v. Cooper Hosp.-Univ. Med. Ctr.*, 163 N.J. 45, 52, 747 A.2d 266, 270 (2000) (NJ law).
[10]     The Lilly Ledbetter Fair Pay Act of 2009, 111 P.L. 2, provides, *inter alia,* that for pay discrimination claims, each new pay check is actionable as an unlawful practice.

these rights. The 90-day limitations period in the Arbitration Clause does not, like the *Alexander* provision, run from the "event" giving rise to the claim; rather, it starts to run when "the Claim or Claims in question *arises*" (*sic; emphasis added*). To my mind, the "arising" language in the Arbitration Clause is compatible with an accrual statute of limitations. And an accrual statute is broad enough to encompass the Ledbetter Act, the continuing violation doctrine, and other tolling doctrines.

Judge Debevoise of this Court has found an "arising" limitations period in an arbitration agreement to be parallel to the "accrual" statute of limitations that applies to personal injury and statutory discrimination claims in this State. *Pyo v. Wicked Fashions, Inc.*, No. 09-cv-2422, 2010 WL 1380982, at * 9-10 (D.N.J. March 31, 2010), *citing* N.J. Stat. Ann. § 2A:14-2 (claim must be asserted within two years "after the cause of any such action shall have accrued"). As Judge Debevoise noted, "[i]t is well-established under New Jersey law that . . . the continuing violation doctrine appl[ies] to that [accrual] statute of limitations." *Id.* at *10 (citing *Shepherd v. Hunterdon Developmental Ctr.*, 174 N.J. 1, 803 A.2d 611, 621 (2002)). Finding no significant difference between "arise" and "accrue" for these purposes, Judge Debevoise held that both the continuing violation doctrine and discovery rule would toll the limitations period in that arbitration agreement. In those respects, this Arbitration Clause is no different.

Other features of this Arbitration Clause, however, render it more burdensome than the one in *Pyo*. The *Pyo* agreement had a one-year (not 90-

day) limitations period, and it imposed only a pre-claim notification (not "discussion") requirement. Those distinctions matter. Even assuming, as I do, that the continuing-violation and Ledbetter tolling doctrines remain available, this Arbitration Clause's pre-claim procedures and the short 90-day limitations period render it unduly burdensome. This 90-day limitations period, short enough in its own right, must also accommodate the internal, informal "discussion" procedure that is a prerequisite to arbitration. Indeed, the Company, simply by delaying its response to an initial complaint, may unilaterally consume some or all of that 90-day period.[11] Taken together, the pre-claim discussion requirement and the 90-day deadline may impede a plaintiff's efforts to formulate a well-supported claim in arbitration. I find these restrictions to be incompatible with the broad, remedial policies of Title VII and EPA.

Neither party has asserted that the claims of the named Plaintiffs here are untimely. Nevertheless, I find that the portion of the Arbitration Clause setting forth the pre-claim procedures and 90-day limitations period would be unenforceable. As discussed in section II.D, below, however, these terms are

---

[11]     Defendants assert that an employee must "discuss" the matter with a supervisor, but technically does not have to wait for a response from the Company before filing a claim in arbitration. The pre-claim discussion requirement appears to be designed to allow the parties to resolve claims informally. That the Employee must wait for the Company's answer is not literally stated, but it is implied: the Employee is to submit the claims to arbitration if, after consultation, "the Employee is not satisfied with the [Company's] *resolution* of the Claim or Claims." Agreement at p.5, ¶ 7(b)(ii) (emphasis added). In reality, then, the 90-day limitations period will be much shorter for any employee who follows the logical, good-faith procedure of allowing the Company a reasonable time to respond to her complaint.

not essential; they can be severed, and the remainder of the Arbitration Clause will remain viable.

### 3. Prohibition of EEOC or Other Agency Consideration

Plaintiffs contend that the Arbitration Clause is void as against public policy because it prevents the EEOC or any other agency from "considering" Plaintiffs' claims. The clause at issue provides as follows:

> Employee and the Company understand that by agreeing to this Paragraph 7 [Arbitration Clause], they are giving up substantial legal rights, i.e., the right to sue in federal and state courts, the right to have disputes or claims heard by a jury *and the right to have claims of civil rights violations* **considered** *by local, state and/or federal investigatory agencies.*

Agreement at ¶ 7(d) (emphasis added). Plaintiffs contend that this language impermissibly prohibits them from filing a charge with the EEOC. Defendants disagree. In Defendants' view, the agreement limits only the employee's right to obtain an award of damages in proceedings before an administrative agency.

Defendants are correct that an employee can validly waive the right to prosecute a claim before an administrative agency, including the EEOC. Every mandatory arbitration agreement, after all, waives a judicial forum; waiving an administrative forum is no more objectionable in principle. *See Parilla,* 368 F.3d at 282. Filing a *charge* with the EEOC to invoke its investigative powers, however, is different. *Cf. Gilmer,* 500 U.S. at 28 ("[a]n individual . . . claimant subject to an Arbitration Clause will still be free to file a charge with the EEOC, even though the claimant is not able to institute a private judicial action.") The

function of such a charge is merely "to place the EEOC on notice that someone . . . believes that an employer has violated the [Act]." *Id.*[12]

In *Parilla,* an employment agreement provided that "[a]ny controversy or claim arising out of or relating in any way to this Agreement, to the breach of this Agreement, and/or to Employee's employment with Employer ... shall be resolved by arbitration and not in a court *or before an administrative agency."* 368 F.3d at 282 (emphasis in original). *Parilla* upheld this clause, which did not (and could not) limit the EEOC's independent investigative and enforcement functions. The Arbitration Clause at issue here is similar. Read in the context of the paragraph, the evident intent of the "agency" language is simply to emphasize that the sole forum for Plaintiffs' claims is arbitration.

The parties' course of conduct suggests that they understood the clause that way. It is undisputed that EEOC charges were filed here. At no time did Defendants argue that Plaintiffs were prohibited from filing such charges or from assisting the EEOC in its investigation. The Arbitration Clause has not prevented Plaintiffs from putting the EEOC on notice that they believe discrimination has occurred, or from cooperating with an EEOC investigation.

Plaintiffs have, at best, raised an ambiguity, and I am not certain they have done even that. But even if the Agreement were ambiguous, that would be a matter for interpretation by the arbitrator. *See Quilloin, supra.*

---

[12]     Filing a charge – because it may be a prerequisite to the filing of a federal court action – may be the prudent course if there is any doubt as to the validity of an arbitration agreement. *See generally* www.eeoc.gov/employees/lawsuit.cfm. All three Plaintiffs here did so, and received right-to-sue letters from the EEOC.

Accordingly, this provision of the Arbitration Clause, as I read it, is not void on grounds of public policy, and would not bar referral of this matter to arbitration.[13]

4. Forum Selection Clause

The forum selection clause provides that all proceedings relating to the Agreement, such as arbitration, "shall, to the extent permitted by law," be held in Broward County, Florida. Agreement at p.7, ¶ 8(g). Ms. Cooper lives in Ohio, and Ms. Beery in Indiana; they assert that the selection of a Florida forum "unreasonably interferes with their ability to pursue their claims."[14]

The named Plaintiffs elected to file suit in New Jersey, many hundreds of miles away. Concededly, New Jersey is closer than Florida to their Midwestern homes, but neither is terribly remote. It is difficult to see why flying to Florida for arbitration (but not to New Jersey for litigation) would be unduly burdensome.

The forum selection clause contains the perhaps superfluous caveat that Florida is the appropriate forum "only to the extent permitted by law." Legal or prudential objections to holding an arbitration in Florida may be asserted in arbitration. Written or oral objections to the location of the arbitration hearing can be submitted to AAA, which will decide the issue at the outset of

---

[13]  The Company should consider strongly whether to redraft this language. A claim by a plaintiff that an invalid or unclear contractual provision intimidated her from alerting the EEOC to unlawful employment practices might present a far different situation.

[14]  One named Plaintiff, Ms. Traeger, is herself a Florida resident. She does not contend that the Florida forum selection clause interferes with her statutory rights.

arbitration. *See* AAA Employment Arbitration Rules 8, 10 (available at http://www.adr.org).

For these reasons, the Court finds that the forum selection clause contained in the Arbitration Clause does not unduly impair Plaintiffs' efforts to vindicate their statutory rights under Title VII and EPA.

## B. Unconscionability

Plaintiffs argue that the Arbitration Clause is unenforceable because it is unconscionable. With limited exceptions, Florida law requires both procedural and substantive unconscionability to invalidate an agreement to arbitrate. *SA-PG Sun City Center, LLC v. Kennedy*, 79 So.3d 916, 919 (Fla. App. 2012).

### 1. Procedural Unconscionability

Plaintiffs maintain that they were presented with the Employment Agreement on a "take it or leave it" basis, and were not given a meaningful opportunity to review what they now claim is a misleading document. They emphasize that they had already begun working at the Company when they were presented with the Agreement.

"As the party seeking to avoid the arbitration provision on the ground of unconscionability, the burden [is] on the party claiming unconscionability] to present evidence sufficient to support that claim." *Gainesville Health Care Center, Inc. v. Weston*, 857 So. 2d 278, 288 (Fla. App. 2003). A party to a contract is "conclusively presumed to know and understand the contents, terms, and conditions of the contract." *Rocky Creek Ret. Prop., Inc. v. Estate of Fox ex rel. Bank of Am.*, 19 So. 3d 1105, 1108-09 (Fla. App. 2009).

Plaintiffs are educated professionals. The Agreement, and in particular the Arbitration Clause, are relatively short. Plaintiffs should have had no trouble reading and understanding the terms of the document. Although they claim generally that the human resources representative rushed them, Plaintiffs have presented no evidence that they were prevented from reading the Agreement. And it is well established that, in the absence of fraud, an individual who signs a contract is assumed to have read and understood its terms. *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 221-22 (3d Cir. 2008) (applying that principle in the context of an arbitration agreement, despite the plaintiff's allegation that it was drafted in English and he spoke only Spanish).

Plaintiffs have presented no evidence that they were not free to negotiate the terms of the Employment Agreement containing the Arbitration Clause; indeed, they have presented no evidence that they even tried to do so. Plaintiffs' unsupported belief that the Company would have insisted, or did insist, on these terms is insufficient to require a finding that Arbitration Clause is procedurally unconscionable.

## 2. Substantive Unconscionability

In addition, and in the alternative, the Agreement was not substantively unconscionable. Here, Plaintiffs essentially repeat the arguments they made in support of their vindication-of-rights theory. For similar reasons, I reject them. Plaintiffs add that the Arbitration Clause is substantively unconscionable because it lacks mutuality, contending that "all the real burdens fall on the employee."

It is well-established that there is "no such doctrine of complete mutuality under federal law." *Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH*, 585 F.2d 39, 47 n.15 (3d Cir. 1978). To the contrary, a contract, if it is supported by consideration, may confer rights and obligations on one party that it does not confer on the other. The U.S. Court of Appeals for the Third Circuit has specifically affirmed that principle in the context of arbitration agreements. *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 180 (3d Cir. 1999) ("[P]arties to an arbitration agreement need not equally bind each other with respect to an arbitration agreement if they have provided each other with consideration beyond the promise to arbitrate."). Florida courts, too, have ruled that a valid agreement to arbitrate does not require complete mutuality of rights and obligations. *See Rocky Creek*, 19 So. 3d at 1109 ("one party's agreement to submit a dispute to arbitration is sufficient consideration to support the other party's agreement to do the same because of the mutuality of obligations that the agreement creates"). In any event, the Arbitration Clause in this case does expressly bind both the employer and employee: "All claims, disputes or issues arising between Employee and the Company" are subject to arbitration.

Substantive unconscionability requires much more than imperfect mutuality; it requires contract terms "so outrageously unfair as to shock the judicial conscience. A substantively unconscionable contract is one that no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Woebse v. Health Care*

*& Ret. Corp. of Am.*, 977 So. 2d 630, 632 (Fla. App. 2008) (internal quotations and citations omitted). The Employment Agreement here, and the Arbitration Clause therein, come nowhere near that standard.

Under Florida law, this Court will not invalidate an arbitration agreement unless it is both procedurally and substantively unconscionable. This Arbitration Clause is neither.

## C. Waiver of Arbitration

Plaintiffs argue that Defendants waived arbitration when, in response to Plaintiffs' charges to the EEOC, they filed documents but did not assert their right to arbitrate. The Arbitration Clause contains an express prohibition on claims being "considered" by the EEOC. Defendants' "attack on the merits" before the EEOC, according to Plaintiffs, effectively constitutes an abandonment of the Arbitration Clause and precludes them from maintaining that arbitration is the exclusive forum for Plaintiffs' claims.

Defendants counter that they were under no obligation to "proffer every possible defense or legal argument before the EEOC." *See Bourgeois v. Nordstrom, Inc.*, 2012 WL 42917, at *9 (D.N.J. Jan 10, 2012) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 308 (3d Cir. 2006)). *Bourgeois* held that an employer did not waive its right to arbitrate by participating in EEOC proceedings, citing numerous federal cases in support.[15] Plaintiffs note,

---

[15]    *Bourgeois* cited *Volpe v. Jetro Holdings*, WL 4916027, at *6 (E.D. Pa. Nov. 14, 2008), which in turn cited *Barna v. Wackenhut Svcs.*, Civ. A. No. 07-147, 2007 WL 3146095, at *6 (N.D. Ohio Oct. 25, 2007) (finding defendant's failure to demand arbitration during EEOC proceedings did not constitute a waiver of right to arbitrate);

however, that the arbitration agreements in those cases do not appear to have contained any express prohibition of administrative "consideration," like the Arbitration Clause here. I do not find that distinction persuasive, for several interrelated reasons:

First, I do not accept that the Arbitration Clause flatly prohibits any and all EEOC proceedings. *See* section II.A.3, *supra.* Thus the inconsistency between Defendants' participation in EEOC proceedings and their intent to arbitrate is not so stark as Plaintiffs would have it.

Second, the EEOC was investigating a charge, not hearing a claim for damages (which concededly is consigned to arbitration). The EEOC's power to investigate a charge of discrimination is unquestioned, and it cannot be subverted by an agreement to which EEOC is not a party. *See Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1, 15–16 (1st Cir. 2005) (preliminary EEOC

---

*Taleb v. AutoNation USA Corp.*, Civ. A. No. 06–2013, 2006 WL 3716922, at *6–7(D. Ariz. Nov. 13, 2006) (rejecting claim that defendant employer's participation in administrative proceedings constituted waiver of right to arbitrate); *Santos v. GE Capital*, 397 F.Supp.2d 350, 356 (D. Conn. 2005) (declining to find employer's participation in EEOC arbitration to be a waiver of right to arbitrate); *Gonzalez v. GE Group Admrs., Inc.*, 321 F.Supp.2d 165, 171–72 (D. Mass. 2004) (finding that defendant employers' participation in administrative proceedings before the EEOC and local agency, accompanied by their failure to seek to compel arbitration, did not constitute a waiver of their right to arbitration); *Hankee v. Menard, Inc.*, 2002 WL 32357167, at *4 ("an employer may participate in EEOC proceedings without losing its rights under the arbitration agreement."); *Medina v. Hispanic Broad. Corp.*, Civ. A. No. 01–2278, 2002 WL 389628, at *5–6 (N.D. Ill.Mar.12, 2002) (rejecting argument that defendant waived its right to enforce the arbitration agreement by not asserting this right during the EEOC's investigation or during a settlement conference at the Illinois Human Resource Commission, where defendant filed its motion to compel arbitration two months after receiving service of process); *Roberson v. Clear Channel Broad., Inc.*, 144 F.Supp.2d 1371, 1375 (S.D. Fla. 2001) (declining to find waiver where defendant did not make a demand for arbitration during EEOC proceedings).

investigation "cannot be halted by an arbitration agreement between the complaining employee and her employer") (citing *EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002)). *Marie* concluded that failing to initiate arbitration during an EEOC investigation was not a waiver of the right to arbitrate, because forcing parallel proceedings would be contrary to the purposes of the Federal Arbitration Act. It also follows that Defendants here did not "waive" anything by failing, for example, to plead an arbitration defense as a bar to the EEOC investigation; no such defense existed.

Third, an employer is required to, and should, cooperate with an EEOC investigation; to discourage such cooperation would be bad policy. And had Defendants failed to cooperate or respond, surely Plaintiffs would be arguing that this was a cover-up or a sign of bad faith.

This federal court action was the first proceeding potentially repugnant to the Arbitration Clause. In this action, Defendants invoked the Arbitration Clause in their first substantive pleading. That was sufficient; Defendants have not waived their right to arbitrate.

## D. Severability

The upshot of all the foregoing is that none of Plaintiffs' challenges to the Arbitration Clause would bar this Court from giving it effect, with one possible exception: I have found the 90-day limitations period and the pre-claim "discussion" procedure to be invalid because they unduly burden Plaintiffs' vindication of their federal statutory rights. The question remains whether the

invalid portion of the Arbitration Clause may be severed, or whether it requires that the entire clause be stricken.

Arbitration is a creature of contract, and a federal court construing the effect of an arbitration agreement must look first to the contract law of the relevant state. Florida courts have held that if an *essential* term of a contract is deemed illegal, it renders the contract unenforceable. On the other hand, "a bilateral contract is severable where the illegal portion of the contract does not go to its essence, and where, with the illegal portion eliminated, there still remains of the contract valid legal promises on one side which are wholly supported by valid legal promises on the other." *Local No. 234. Henley & Beckwith, Inc.*, 66 So.2d 818, 821-22 (Fla. 1953). Therefore, "the make-or-break task before us is to decide whether the stricken portion of the employment arbitration agreement constitutes 'an essential part of the agreed exchange' of promises." *Spinetti*, 324 F.3d at 214.

Both the "liberal federal policy favoring arbitration agreements," *Gilmer*, 500 U.S. at 24, and applicable precedents dealing with similar severance issues point toward severance if it can be done without compromising the essence of the agreement. *Compare Spinetti*, 324 F.3d at 214 (refusing to invalidate an entire arbitration agreement in which only two provisions were substantively unconscionable, stating that "[y]ou don't cut down the trunk of a tree because some of its branches are sickly") *with Alexander*, 341 F.3d at 271 (striking entire agreement because the majority of its terms were unconscionable and stating that "[t]he cumulative effect of so much illegality prevents us from

29

enforcing the Arbitration Clause. Because the sickness has infected the trunk, we must cut down the entire tree.").

Here, the essence of the disputed agreement is that the parties will settle employment disputes through fair and mutually binding arbitration. The applicable AAA procedures and the majority of the provisions in the Arbitration Clause are reasonably calculated to that end. The pre-claim procedure and limitations period (which Defendants do not seem to have invoked in any event) can be severed without disturbing the central goals of the Agreement or the parties' mutual obligations to arbitrate. Severing the invalid provision simply gives the employee sufficient time to formulate a claim. In short, only one provision of the Arbitration Clause is unenforceable: the one setting forth the pre-claim discussion procedure and imposing a 90-day limitations period. I will sever that provision and enforce the remainder of the Arbitration Clause.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Compel Arbitration of the claims asserted by named Plaintiffs Beery, Traeger, and Cooper is granted. Ms. Beery's, Ms. Traeger's, and Ms. Cooper's claims are dismissed in favor of arbitration before the American Arbitration Association in Broward County, Florida, or such other location as may be fixed the AAA or by the parties' consent. Whether the claims in arbitration are to proceed on an individual or a class basis may also be decided in the arbitration.

Finally, the parties are directed to submit letter briefs not to exceed five pages setting forth their positions on whether this Court retains jurisdiction

over the proposed Equal Pay Act collective action given that certain individuals filed consent to join forms before conditional certification was granted and court-approved notice was sent to employees.

An appropriate order will be filed.

KEVIN MCNULTY
United States District Judge

Date: June 14, 2013